UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOSEPH JONES,<br><br>      Plaintiff,<br><br>v.<br><br>CARRABY *et al.*,<br><br>      Defendants. | Case No.:  18-CV-1609-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT DR. FOYLE'S MOTION TO DISMISS COMPLAINT**<br><br>**[Doc. No. 8.]** |

   Plaintiff William Joseph Jones, a state prisoner proceeding *pro se*, has filed a civil rights action seeking relief under the Civil Rights Act, 42. U.S.C. § 1983. Defendant Michael Foyle, O.D. has filed a motion to dismiss. For the reasons that follow, the Court RECOMMENDS that Defendant's motion be GRANTED, the Complaint be dismissed, and Plaintiff be granted leave to amend.

## I. BACKGROUND

### A. Factual Background

   Plaintiff William Joseph Jones is an inmate housed at Centinela State Prison ("Centinela") in Imperial, California. Defendant Foyle is employed by the California Department of Corrections and Rehabilitations ("CDCR"). On March 3, 2017, Plaintiff

received cataract surgery on his right eye by Dr. Carraby of California Retina Associates ("CRA"), a private health care provider contracted by the California Department of Corrections and Rehabilitations ("CDCR"). (Doc. No. 1 at 5.)[1] During surgery, a medical instrument detached Plaintiff's retina, causing severe visual impairment in Plaintiff's right eye. (Doc. No. 1 at 7.)

Dissatisfied with his care, Plaintiff filed a CDCR Form 602 Healthcare Appeal asking, on April 16, 2017, to have his eyes reexamined. (Doc. No. 8 at 2.) Dr. Ortega initially denied Plaintiff's appeal, but later granted it upon further review. (Doc. No. 1 at 9.) Plaintiff was then sent to CRA for post-surgical eye care and additional follow-up care visits. (*Id.*)

According to the Complaint, Defendant Dr. Foyle examined Plaintiff on September 20, 2017 to determine whether Plaintiff required glasses. (Doc. No. 1 at 12.) However, Defendant was unable to correct Plaintiff's vision in his right eye with glasses and referred him back to a specialist for further evaluation. (*Id.* at 12-13.) Dr. Delengocky examined Plaintiff the same day and agreed with Dr. Foyle's assessment that Plaintiff's vision in his right eye could not be corrected with glasses. (*Id.* at 13.)

After additional follow-up appointments at CRA, Plaintiff visited Dr. Foyle again on December 7, 2017. (Doc. No. 1 at 14.) After an examination, Dr. Foyle again stated Plaintiff would not need glasses. (*Id.*) A week later, at a follow up appointment, Dr. Foyle suggested Plaintiff ask Dr. Mani about corrective surgery for his retina. (*Id.*)

While visiting UCSD to see a glaucoma specialist, doctors told Plaintiff that corrective surgery would not be an option because the damage to his eye was irreversible and surgery would only further damage his vision. (*Id.*)

Based on these facts, Plaintiff alleges Defendant Foyle failed to properly treat him by continuously passing the responsibility to properly care for his eye to other doctors.

---

[1] All citations to documents filed on the Court's CM/ECF system are to the system's electronically-generated pagination.

(Doc. No. 1 at 16.) Plaintiff alleges he is legally blind out of his right eye, an impairment that creates unusual hardship and fear while in prison. (*Id.*) Plaintiff alleges violations of the Eighth Amendment based Defendant Dr. Foyle's deliberate indifference to his serious medical needs.

## B. Procedural Background

Plaintiff filed the initial complaint on July 16, 2018, alleging Defendant Foyle and others violated his Eight Amendment rights. Defendant Foyle filed a motion to dismiss on January 11, 2019 (Doc. No. 8 at 1), Plaintiff filed an opposition on February 19, 2019 (Doc. No. 17 at 1), and Defendant filed a reply on February 27, 2019 (Doc. No. 18 at 1).

## II. LEGAL STANDARD

## A. Rule 12(b)(6): Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise a motion that the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained

in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## B. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

Where, as here, the plaintiff appears *pro se* in a civil rights suit, the Court also must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. Cty of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

Moreover, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## III. DISCUSSION

## A. Deliberate Indifference to Plaintiff's Medical Needs

### 1. Legal Background

Under the Eight Amendment, "[t]he government has an obligation to provide medical care for those whom it punishes by incarceration." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).

To ascertain whether a prisoner has a claim under § 1983, the appropriate standard is whether the officials demonstrated "deliberate indifference to a prisoner's serious illness or injury." *Estelle*, 429 U.S. at 105. The plaintiff must fulfill two prongs to satisfy the test for deliberate indifference. First, the plaintiff is required to show "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, the plaintiff must demonstrate the defendants

were "deliberately indifferent" to the prisoner's needs. *Id*. Inadequate medical care constitutes cruel and unusual punishment if the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cnty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010), and is shown in circumstances where there is "a purposeful act or failure to respond to a prisoner's pain or possible medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Neither medical malpractice nor negligence are sufficient and neither amounts to deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

## 2. Prong One: Serious Medical Need

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066, (9th Cir. 2014) (citation omitted) (monocular blindness caused by a cataract significantly affects an individual's daily activities and therefore is a serious medical need).

Here, the Complaint sufficiently alleges that Plaintiff had a serious medical need during his interactions with Dr. Foyle, the prison optometrist who examined Plaintiff and referred him to off-site optometrists and surgeons for further, more complicated medical care. Plaintiff alleges that on September 20, 2017,[2] Dr. Foyle examined him at Centinela

---

[2] Although the "botched" cataract surgery that Plaintiff alleges led to his eye troubles occurred on March 17, 2017, the Complaint makes no mention of any events related to Dr. Foyle until seven months later.

prison and referred him to an eye specialist to "focus" on the "problem," which Plaintiff identifies as his right eye being "no good." (Doc. No. 1 at 12.) The next time Dr. Foyle saw Plaintiff according to the Complaint was on December 7, 2017, when Dr. Foyle examined him based on complaints that he had no vision in his right eye. (*Id.* at 14.) A week later, Dr. Foyle examined Plaintiff again for "retina damage."

Although the above allegations are arguably few, Plaintiff nonetheless successfully alleges the existence of a serious medical need. That medical need consists of Plaintiff's continuing lack of vision in his right eye when he presented to Dr. Foyle for care. Unlike other cases where district courts have found that minor vision-related conditions did not rise to the "serious medical need" level, Plaintiff here alleges the complete lack of vision in one eye. *Cf. Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) (need for reading glasses did not present a serious medical need); *Johnson v. Morgan*, No. 16CV5738-BHS-TLF, 2018 U.S. Dist. LEXIS 146463, at *17-18 (W.D. Wash. June 6, 2018) ("mild" cataracts and vision within guidelines not did not constitute serious medical need); *Morales v. Cal. Forensic Med. Grp., Inc.*, No. CIV-S-09-3610-GGH-P, 2010 U.S. Dist. LEXIS 44949, at *4-6 (E.D. Cal. Apr. 6, 2010) (dismissing prisoner's claims of "blurry vision and irritation of un-focused sight" due to lack of corrective eyewear for failing to state an Eighth Amendment claim under § 1915A(b)).

Based on the allegations in the Complaint, Plaintiff's right eye blindness constitutes a serious medical need. *See Colwell v. Bannister*, 763 F.3d 1060, 1066, (9th Cir. 2014) (citation omitted) (monocular blindness caused by a cataract significantly affects an individual's daily activities and therefore is a serious medical need); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (allegation that prescription eyeglasses were required to avoid double vision and loss of depth perception that resulted from a prior head injury sufficed to allege serious medical need); *Li v. Contra Costa Cty.*, No. 16CV2861-EMC, 2017 U.S. Dist. LEXIS 176168, at *27 (N.D. Cal. Oct. 24, 2017) (finding a jury could find plaintiff's 20/100 vision and ability to see only 20 feet in front of him constituted a serious medical need).

### 3.    Prong Two: Indifference to Serious Medical Need

Plaintiff must also sufficiently allege that Dr. Foyle was deliberately indifferent to his serious medical needs. Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference can be established (1) "when prison officials deny, delay or intentionally interfere with medical treatment," or (2) "it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05). However, a showing of negligence or medical malpractice does not rise to the level of cruel and unusual punishment under the Eighth Amendment. *Id*. When delay in medical treatment is the conduct at issue, the plaintiff must demonstrate that the "delay[] would cause significant harm and that [the] [d]efendant[] should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Here, Plaintiff fails to allege facts sufficient to demonstrate Dr. Foyle's indifference to his serious medical needs. The totality of Plaintiff's allegations simply show that Dr. Foyle examined Plaintiff a few times and referred him to off-site doctors for further care. There is very little, if anything, in the Complaint that could demonstrate Dr. Foyle's indifference—especially given Plaintiff's allegations that Dr. Foyle actually referred him out for further care.

In opposition to Dr. Foyle's motion to dismiss, Plaintiff filed a declaration that contains much more detailed allegations than the Complaint contains against Dr. Foyle. For example, the first time Dr. Foyle is mentioned in the Complaint is an allegation that he examined Plaintiff on September 20, 2017—seven full months after the "botched" cataract surgery performed by other doctors. However, Plaintiff's opposition declaration actually indicates Dr. Foyle examined him on April 20, 2017. (Doc. No. 17 at 4.) The opposition also contains additional details about the condition of Plaintiff's eye when Dr. Foyle

examined him shortly after the cataract surgery. However, since none of these details appear in the Complaint, the Court cannot consider them because new facts contained in a declaration outside of the four corners of the Complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.").

Based on the foregoing, Plaintiff has failed to demonstrate Defendant Foyle's deliberate indifference to his medical needs.

## B.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend is to be freely given when justice so requires. "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Here, there is no showing of undue delay, bad faith, dilatory motive, or undue prejudice.  Since this is Plaintiff's first complaint, he has not repeatedly failed to cure deficiencies in any previous amendments. Leave to amend would not be futile upon inclusion of certain additional facts. Given that all the other factors weigh in favor of amendment and it is not clear that amendment would be futile, the Court RECOMMENDS Plaintiff be granted leave to file an amended complaint.

When amending this claim, Plaintiff should allege how *Dr. Foyle* specifically intentionally denied or delayed Plaintiff's medical treatment. Additionally, Plaintiff should specifically allege how Defendant's conduct led to further significant injury by including the fact alleged in the opposition that denying Plaintiff access to glasses caused deterioration of his visual activity. Plaintiff should allege *all* the facts that he believes are relevant to his claim against Dr. Foyle. If Plaintiff claim that Dr. Foyle delayed his medical

care, Plaintiff should allege how Dr. Foyle's actions led to further injury and what exactly that injury was.

However, Plaintiff should be aware that not every person who was somehow involved in his medical care is liable under section 1983. If Plaintiff does not have any such facts against Dr. Foyle, he should not feel obligated to amend the Complaint for the sake of doing so because not everyone whose name was somehow associated with the eye treatment process can or should be held civilly liable. In short, Plaintiff should exercise judgment and discretion when deciding whether Dr. Foyle really is responsible for an Eighth Amendment violation. If Dr. Foyle is not responsible, then Plaintiff should not amend the Complaint and should allow Dr. Foyle to be dismissed from this case.

## IV. CONCLUSION

Based on the foregoing, this Court RECOMMENDS that Defendant Foyle's motion to dismiss be GRANTED, that the Complaint be dismissed, and that Plaintiff be granted leave to file an amended complaint.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than May 31, 2019**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal.

**IT IS ORDERED** that **no later than June 18, 2019**, any party may file a response to objections, if any are filed.

**IT IS SO ORDERED.**

DATED: May 1, 2019

_____

Hon. William V. Gallo
United States Magistrate Judge