UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOSEPH JONES,<br><br>Plaintiff,<br><br>v.<br><br>CARRABY *et al.*,<br><br>Defendants. | Case No.: 18-CV-1609-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT ROGELIO ORTEGA'S MOTION TO DISMISS COMPLAINT**<br><br>[Doc. No. 6.] |

Plaintiff William Joseph Jones, a state prisoner proceeding *pro se* and in *forma pauperis*, has filed a civil rights action seeking relief under the Civil Rights Act, 42. U.S.C. § 1983. Defendant Dr. Rogelio Ortega has filed a motion to dismiss. For the reasons that follow, the Court RECOMMENDS that Defendant's motion be GRANTED, the Complaint against Dr. Ortega be dismissed, and Plaintiff be granted leave to amend.

I.  **BACKGROUND**

A.  **Factual Allegations**

Plaintiff is an inmate housed at Centinela State Prison in Imperial, California. Defendant Rogelio Ortega, M.D., is employed by the California Department of Corrections and Rehabilitations ("CDCR"). In March 2017, Plaintiff underwent cataract surgery to his

right eye by a doctor at California Retina Associates ("CRA"), a private healthcare provider contracted by the CDCR. (Doc. No. 1 at 5.)[1] During surgery, a medical instrument detached Plaintiff's retina, causing severe visual impairment in Plaintiff's right eye. (Doc. No. 1 at 7.)

Dissatisfied with his care, Plaintiff filed a CDCR Form 602 Healthcare Appeal asking, on April 16, 2017, to have his eyes reexamined. (Doc. No. 8 at 2.) Dr. Ortega initially denied Plaintiff's appeal, but later granted it upon further review. (Doc. No. 1 at 9.) Plaintiff was then sent to CRA for post-surgical eye care and additional follow-up care visits. *Id.*

Plaintiff then received continued off-site treatment from CRA doctors on April 20, 2017; May 2, 2017; May 19, 2017; and June 6, 2017. (Doc. No. 1 at 10.) Plaintiff received additional treatment at UC San Diego ("UCSD") on June 9, 2017. (Doc. No. 1 at 10.) On June 19, 2017, Plaintiff met with Defendant Ortega for a follow-up visit and requested an expedited appointment with a refraction specialist. (Doc. No. 1 at 11.) After the visit with Defendant Ortega, Plaintiff was transported off-site where he had sixteen more appointments at CRA and UCSD. (Doc. No. 1 at 11-15.)

Plaintiff states that he is legally blind out of his right eye, an impairment that creates unusual hardship and fear while in prison. (Doc. No. 1 at 16.) Plaintiff alleges that Defendant Ortega failed to properly treat him by continuously passing on responsibility to other doctors instead of providing him laser cataract surgery, a procedure that supposedly would have restored his vision "within hours." (*Id.*) Plaintiff alleges Dr. Ortega violated his Eighth Amendment rights based on his alleged deliberate indifference to Plaintiff's serious medical needs.

---

[1] All citations to documents filed on the Court's CM/ECF system are to the system's electronically-generated pagination.

## B. Procedural Background

Plaintiff filed the initial complaint on July 16, 2018, alleging that Defendant Ortega and others violated his Eight Amendment rights. Defendant Ortega thereafter filed a motion to dismiss (Doc. No. 6), Plaintiff filed an opposition (Doc. No. 10), and Defendant filed a reply (Doc. No. 16).[2]

## II. LEGAL STANDARD

### A. Rule 12(b)(6): Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise a motion that the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's

---

[2] All citations to documents filed on the Court's CM/ECF system are to the system's electronically-generated page numbers.

"judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

**B. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions**

Where, as here, the plaintiff appears *pro se* in a civil rights suit, the Court also must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. Cty of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

Moreover, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### III. DISCUSSION

**A. Deliberate Indifference to Plaintiff's Serious Medical Needs**

**1. Legal Background**

Under the Eight Amendment, "[t]he government has an obligation to provide medical care for those whom it punishes by incarceration." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).

To ascertain whether a prisoner has a claim under § 1983, the appropriate standard is whether the officials demonstrated "deliberate indifference to a prisoner's serious illness or injury." *Estelle*, 429 U.S. at 105. The plaintiff must fulfill two prongs to satisfy the test for deliberate indifference. First, the plaintiff is required to show "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, the plaintiff must demonstrate the defendants were "deliberately indifferent" to the prisoner's needs. *Id*. Inadequate medical care

constitutes cruel and unusual punishment if the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cnty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010), and is shown in circumstances where there is "a purposeful act or failure to respond to a prisoner's pain or possible medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Neither medical malpractice nor negligence are sufficient and neither amounts to deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

### 2. Prong One: Serious Medical Need

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066, (9th Cir. 2014) (citation omitted) (monocular blindness caused by a cataract significantly affects an individual's daily activities and therefore is a serious medical need).

Here, the Complaint sufficiently states that Plaintiff had a serious medical need during his interactions with Dr. Ortega, who was a prison optometrist who conducted on-site examinations of Plaintiff and referred him to off-site optometrists and surgeons for further, more complicated medical care. Dr. Ortega handled an inmate appeal Plaintiff filed, asking that he be re-examined and be provided further care for an issue he experienced in his right eye after the "botched" cataract surgery. (Doc. No. 1 at 9.) The issue he identified to Dr. Ortega was the loss of vision in his right eye. (*Id.*) Unlike other cases where district courts have found that minor vision-related issues did not rise to the "serious medical need" level, Plaintiff here alleges the complete lack of vision in one eye.

*Cf. Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) (need for reading glasses did not present a serious medical need); *Johnson v. Morgan*, No. 16CV5738-BHS-TLF, 2018 U.S. Dist. LEXIS 146463, at *17-18 (W.D. Wash. June 6, 2018) ("mild" cataracts and vision within guidelines not did not constitute serious medical need); *Morales v. Cal. Forensic Med. Grp., Inc.*, No. CIV-S-09-3610-GGH-P, 2010 U.S. Dist. LEXIS 44949, at *4-6 (E.D. Cal. Apr. 6, 2010) (dismissing prisoner's claims of "blurry vision and irritation of un-focused sight" due to lack of corrective eyewear for failing to state an Eighth Amendment claim under § 1915A(b)).

Based on the allegations in the Complaint, Plaintiff's right eye blindness constitutes a serious medical need. *See Colwell v. Bannister*, 763 F.3d 1060, 1066, (9th Cir. 2014) (citation omitted) (monocular blindness caused by a cataract significantly affects an individual's daily activities and therefore is a serious medical need); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (allegation that prescription eyeglasses were required to avoid double vision and loss of depth perception that resulted from a prior head injury sufficed to allege serious medical need); *Li v. Contra Costa Cty.*, No. 16CV2861-EMC, 2017 U.S. Dist. LEXIS 176168, at *27 (N.D. Cal. Oct. 24, 2017) (finding a jury could find plaintiff's 20/100 vision and ability to see only 20 feet in front of him constitutes a serious medical need).

### 3. Prong Two: Indifference to Serious Medical Need

Plaintiff must also sufficiently allege that Dr. Foyle was deliberately indifferent to his serious medical needs. Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference can be established (1) "when prison officials deny, delay or intentionally interfere with medical treatment," or (2) "it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05). However, a showing of negligence or medical malpractice does not rise to

the level of cruel and unusual punishment under the Eighth Amendment. *Id.* When delay in medical treatment is the conduct at issue, the plaintiff must demonstrate that the "delay[] would cause significant harm and that [the] [d]efendant[] should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

The Complaint contains essentially only two substantive allegations against Dr. Ortega. The first allegation suggests only that Dr. Ortega simply reviewed and approved an inmate appeal asking for medical care on May 25, 2017 after he initially denied the request on April 20, 2017. (Doc. No. 1 at 9.) Thus, this allegation only demonstrates that Dr. Ortega *approved—i.e.*, did not deny—the request for medical care. It is difficult to imagine how approval of the very outcome Plaintiff sought amounts to indifference. The second allegation against Dr. Ortega is that he examined Plaintiff on June 19, 2017—three months after the "botched" cataract surgery—and Plaintiff "asked him to speed up [the] visit to Dr. Foley." (Doc. No. 1 at 11.) This visit with Dr. Ortega immediately followed an off-site visit with private doctors at California Retina Associates on the same day. (*Id.*) The remaining dates and events surrounding these allegations show that Plaintiff was being examined by prison and private doctors on a routine and continuous basis. The two allegations above fail to show that Dr. Ortega *purposely* delayed or disregarded Plaintiff's serious medical need.

Although Plaintiff vaguely contends Dr. Ortega failed to respond "at all" to his serious medical need, neither the Complaint nor his opposition to Defendant's motion to dismiss contain any indication as to what more Dr. Ortega could have done. The totality of Plaintiff's allegations merely allege that Dr. Ortega approved a Form 602 appeal a month after he initially denied it, that Plaintiff asked that his visit with Dr. Foley be expedited, and that he continued to be seen multiple times by other doctors in each month that followed this request. This is a far cry from Dr. Ortega failing to respond "at all." Under these facts, Plaintiff wholly fails to allege facts that suggest Dr. Ortega disregarded Plaintiff's serious medical need.

7

18-CV-1609-AJB(WVG)

However, assuming for the sake of argument that Plaintiff had properly alleged Dr. Ortega deliberately delayed or ignored Plaintiff's needs, Plaintiff must also allege facts showing that any delay led to further injury. *McGluckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). Here, Plaintiff offers *no* allegations that Dr. Ortega's one-month delay in approving Plaintiff's appeal or a delay in any of Plaintiff's 21 appointments with CRA or UCSD physicians caused additional injury.

### 4. Defendant's Liability is Not Based on His Role in the Appeal Process

Defendant also seeks to dismiss the Complaint based on Dr. Ortega's involvement with the Form 602 inmate appeal he reviewed and ultimately approved. However, Defendant's characterization of the allegations against him is misguided. Plaintiff does not challenge the appeal process itself so much as he alleges that Dr. Ortega gained knowledge of Plaintiff's serious medical needs as a result of the appeal and then proceeded to ignore those needs. Plaintiff's complaint is thus not dismissible on the basis that it is a challenge to the inmate appeal process itself.

It is true that allegations against a prison official who reviews or denies a grievance generally do not state a claim of deliberate indifference. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("Inmates lack a separate constitutional entitlement to a specific prison grievance procedure."). That is because prison grievance procedures are procedural rights that do not give rise to a protected liberty interest. *Id.* Here, however, Plaintiff has not merely complained that Dr. Ortega performed clerical acts of reviewing or denying his inmate appeal, and Plaintiff does not challenge the appeal process itself. Rather, plaintiff has alleged that he put Dr. Ortega on notice through the inmate appeals process—thus establishing his knowledge—that Plaintiff had an ongoing serious medical need. *See Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (prisoner's letter to administrator alerting him to constitutional violation sufficient to generate genuine issue of material fact as to whether administrator was aware of violation); *Dennis v. Kernan*, No. 16CV542-JAM-AC-P, 2019 U.S. Dist. LEXIS 30667, at *20-22 (E.D. Cal. Feb. 26, 2019); *Payan v. Tate*, No.

13CV807-LJO-BAM-PC, 2017 U.S. Dist. LEXIS 31496, at *13 (E.D. Cal. Mar. 6, 2017) ("Plaintiff has not merely complained that the Defendants reviewed or denied his inmate appeal. Rather, plaintiff has alleged that he put the reviewing defendants on notice through the inmate appeals process, establishing knowledge, that Plaintiff had ongoing serious medical conditions and was not receiving proper care."), report and recommendation adopted, 2017 U.S. Dist. LEXIS 49613 (E.D. Cal. Mar. 31, 2017); *Edwards v. Hsieh*, 2016 U.S. Dist. LEXIS 54386, at *4-5 (E.D. Cal. Apr. 22, 2016), report and recommendation adopted, 2016 U.S. Dist. LEXIS 78878 (E.D. Cal. June 16, 2016) ("These allegations are sufficient to state a claim against this defendant because plaintiff alleges that the defendant's response to his inmate appeal amounted to a refusal to provide him with adequate medical care in keeping with Eighth Amendment standards). Plaintiff is not seeking liability for deliberate indifference in the handling of the grievances but rather contends that Dr. Ortega allegedly had knowledge of a serious medical need and was then indifferent to that need. Accordingly, the Complaint is not dismissible based on a purported challenge to the inmate appeal process.

**B.     Leave to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend shall be freely given when justice so requires. "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Here, there is no showing of undue delay, bad faith, dilatory motive, or undue prejudice. Since the Complaint is Plaintiff's first operative pleading, he has not repeatedly failed to cure deficiencies in any previous amendments. As for futility of amendment, Plaintiff's opposition to the motion to dismiss does not contain any additional facts that demonstrate Dr. Ortega's failure to address Plaintiff's serious medical need. To the contrary, everything in the Complaint and opposition tends to show Plaintiff received care

on a continuous basis and Dr. Ortega did not delay such care. That being said, the Court cannot state definitively that no such facts exist. And given that Plaintiff is a *pro se* prisoner, he should be afforded at least one opportunity to amend.

When amending the Complaint, Plaintiff must allege facts against Dr. Ortega alleging how exactly *Dr. Ortega* delayed the proper care of Plaintiff's eye, what exactly that proper care was or should have been, how *Dr. Ortega* was responsible for providing that care (rather than other doctors who saw Plaintiff), how any delay attributable to Dr. Ortega caused Plaintiff further injury, and what that further injury was. However, Plaintiff should be aware that not every person who was somehow involved in his medical care is liable under section 1983. If Plaintiff does not have any such facts against Dr. Ortega, he should not feel obligated to amend the Complaint for the sake of doing so because not everyone whose name was somehow associated with the eye treatment process can or should be held civilly liable. In short, Plaintiff should exercise judgment and discretion when deciding whether Dr. Ortega really is responsible for an Eighth Amendment violation. If Dr. Ortega is not responsible, then Plaintiff should not amend the complaint and should allow Dr. Ortega to be dismissed from this case.

Given that all the other factors weigh in favor of amendment and it is not clear that amendment would be futile, the Court RECOMMENDS Plaintiff be granted leave to file an amended complaint.

### IV. CONCLUSION

This Court RECOMMENDS that Defendant Ortega's motion to dismiss be GRANTED and that the Complaint against Dr. Ortega be DISMISSED WITH LEAVE TO AMEND.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than May 31, 2019**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall

be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal.

**IT IS ORDERED** that **no later than June 18, 2019**, any party may file a response to objections, if any are filed.

**IT IS SO ORDERED.**

DATED: May 1, 2019

Hon. William V. Gallo
United States Magistrate Judge