UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOSEPH JONES,<br><br>Plaintiff,<br><br>v.<br><br>CARRABY *et al.*,<br><br>Defendants. | Case No.: 18-CV-1609-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT DR. FOYLE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 28.] |

After the Court dismissed Plaintiff's Complaint against Defendant Michael Foyle, O.D., Plaintiff filed a First Amended Complaint with leave of Court. Foyle now moves to dismiss the FAC. For the reasons that follow, the Court RECOMMENDS that Defendant's motion be DENIED.

## I. BACKGROUND

**A. Factual Background**

Plaintiff William Joseph Jones is an inmate who was once housed at Centinela State Prison in Imperial, California. Defendant Foyle is employed by the California Department of Corrections and Rehabilitations ("CDCR"). This case arises from an alleged "botched"

surgery on Plaintiff's right eye by private surgeons and the follow-up care he received in part from Centinela prison optometrist, Dr. Michael Foyle.

On March 3, 2017, Plaintiff underwent cataract surgery on his right eye by Dr. Carraby of California Retina Associates ("CRA"), a private health care provider contracted by the CDCR.[1] In the original Complaint, Plaintiff claimed a medical instrument detached his retina during the surgery and caused severe visual impairment in his right eye. In the FAC, he claims he was not provided sufficient anesthesia and eye drops, which resulted in irreversible damage.

Dissatisfied with the outcome of the surgery, Plaintiff filed a CDCR Form 602 Healthcare Appeal on April 16, 2017 asking to have his eyes reexamined. Defendant Foyle examined Plaintiff on April 20, 2017 for "refraction"[2] to determine whether to prescribe eyeglasses. Defendant Foyle chose not to prescribe any eyeglasses at that time.

Approximately two weeks after the appeal was submitted, Plaintiff was again sent off-site to CRA for post-surgical eye care. Plaintiff was transported to CRA for follow-up care on May 19, 2017, June 6, 2017, June 19, 2017, July 17, 2017, July 29, 2017, August 21, 2017, and September 8, 2017.

Plaintiff was again examined for eyeglasses by Dr. Foyle on September 20, 2017. Dr. Foyle was still unable to correct Plaintiff's vision in his right eye with glasses and referred him back to the specialists at CRA for further evaluation of his retina. Plaintiff was transported to CRA the same day, where Dr. Delengocky performed additional tests

---

[1] All citations to documents filed on the Court's CM/ECF system are to the system's electronically-generated pagination.

[2] "A refraction is the process of determining if there is a need for corrective eyeglasses or contact lenses. It is an essential part of an eye examination and necessary to write a prescription for glasses or contact lenses." What is Refraction?, https://www.southshorevisioncare.com/eye-care-services-in-norwell/what-is-refraction/ (last visited Dec. 27, 2019).

and agreed with Dr. Foyle's assessment that plaintiff's right eye vision could not be corrected with glasses.

After four additional visits to specialists at CRA, Plaintiff was examined by Dr. Foyle on December 6, 2017. Dr. Foyle checked Plaintiff's vision and again noted that glasses would not correct vision in his right eye. At a visit one-week later, Dr. Foyle suggested that plaintiff speak with Dr. Mani of CRA about surgical options for his retina.

After Plaintiff was transferred to another prison, he obtained a prescription for glasses from California Correctional Institution optometrist Dr. Young. Plaintiff alleges Dr. Foyle should have prescribed him glasses a year before Dr. Young did and that this one-year delay caused "significant further" irreversible damage to *both* of his eyes—not just his right eye. Plaintiff accordingly alleges violations of the Eighth Amendment based Defendant Dr. Foyle's deliberate indifference to his serious medical needs.

**B. Procedural Background**

Plaintiff filed the initial complaint on July 16, 2018, alleging Defendant Foyle and others violated his Eight Amendment rights. The Court granted Defendant Foyle's motion to dismiss with leave to amend. (Doc. No. 25.) Plaintiff thereafter filed a First Amended Complaint (Doc. No. 27), which Defendant Foyle now moves to dismiss (Doc. No. 28). Plaintiff has filed an opposition (Doc. No. 30), and Defendant has filed a reply (Doc. No. 31).

## II. LEGAL STANDARD

**A. Rule 12(b)(6): Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise a motion that the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[ ] more than an unadorned, the-defendant-

3

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

**B.      Standards Applicable to *Pro Se* Litigants in Civil Rights Actions**

Where, as here, the plaintiff appears *pro se* in a civil rights suit, the Court also must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. Cty of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

Moreover, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## III. DISCUSSION

### A. Legal Background

Under the Eight Amendment, "[t]he government has an obligation to provide medical care for those whom it punishes by incarceration." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).

To ascertan whether a prisoner has a claim under § 1983, the appropriate standard is whether the officials demonstrated "deliberate indifference to a prisoner's serious illness or injury." *Estelle*, 429 U.S. at 105. The plaintiff must fulfill two prongs to satisfy the test for deliberate indifference. First, the plaintiff is required to show "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, the plaintiff must demonstrate the defendants were "deliberately indifferent" to the prisoner's needs. *Id*. Inadequate medical care constitutes cruel and unusual punishment if the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cnty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010), and is shown in circumstances where there is "a purposeful act or failure to respond to a prisoner's pain or possible medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Neither medical malpractice nor negligence are sufficient and neither amounts to deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

### B. Prong One: Serious Medical Need

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's

daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066, (9th Cir. 2014) (citation omitted) (monocular blindness caused by a cataract significantly affects an individual's daily activities and therefore is a serious medical need).

Here, Plaintiff successfully alleges the existence of a serious medical need. That medical need consists of Plaintiff's continuing lack of vision in his right eye when he presented to Dr. Foyle for care. Unlike other cases where district courts have found that minor vision-related conditions did not rise to the "serious medical need" level, Plaintiff here alleges the complete lack of vision in one eye. *Cf. Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) (need for reading glasses did not present a serious medical need); *Johnson v. Morgan*, No. 16CV5738-BHS-TLF, 2018 U.S. Dist. LEXIS 146463, at *17-18 (W.D. Wash. June 6, 2018) ("mild" cataracts and vision within guidelines not did not constitute serious medical need); *Morales v. Cal. Forensic Med. Grp., Inc.*, No. CIV-S-09-3610-GGH-P, 2010 U.S. Dist. LEXIS 44949, at *4-6 (E.D. Cal. Apr. 6, 2010) (dismissing prisoner's claims of "blurry vision and irritation of un-focused sight" due to lack of corrective eyewear for failing to state an Eighth Amendment claim under § 1915A(b)).

Based on the allegations in the Complaint, Plaintiff's right eye blindness constitutes a serious medical need. *See Colwell v. Bannister*, 763 F.3d 1060, 1066, (9th Cir. 2014) (citation omitted) (monocular blindness caused by a cataract significantly affects an individual's daily activities and therefore is a serious medical need); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (allegation that prescription eyeglasses were required to avoid double vision and loss of depth perception that resulted from a prior head injury sufficed to allege serious medical need); *Li v. Contra Costa Cty.*, No. 16CV2861-EMC, 2017 U.S. Dist. LEXIS 176168, at *27 (N.D. Cal. Oct. 24, 2017) (finding a jury could find plaintiff's 20/100 vision and ability to see only 20 feet in front of him constituted a serious medical need).

Additionally, Plaintiff alleges that Dr. Foyle's alleged failure to prescribe him eyeglasses led to further damage—including irreversible nerve damage—in his left eye, and he alleges Dr. Foyle should have known this further damage would occur.

**C.     Prong Two: Indifference to Serious Medical Need**

Plaintiff must also sufficiently allege that Dr. Foyle was deliberately indifferent to his serious medical needs. Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference can be established (1) "when prison officials deny, delay or intentionally interfere with medical treatment," or (2) "it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05). However, a showing of negligence or medical malpractice does not rise to the level of cruel and unusual punishment under the Eighth Amendment. *Id*. When delay in medical treatment is the conduct at issue, the plaintiff must demonstrate that the "delay[] would cause significant harm and that [the] [d]efendant[] should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

The Court's role at this stage of the litigation is not to determine whether Plaintiff has *proven* that the yearlong delay caused significant harm but only to determine whether he has *alleged* as much. Dr. Young ordered eyeglasses for Plaintiff nearly a year after Dr. Foyle determined Plaintiff did not need glasses. Given the severe nature of Plaintiff's eye issues, he claims Dr. Foyle caused harm to *both* of his eye—not just his blind right eye— by not prescribing him glasses.  The FAC contains the following allegations, which did not appear in the original Complaint:

> On multiple visits with deliberate indifference the Plaintiff was <u>DENIED</u> Medical Treatment fore Refraction. (glasses) After transfer to New Prison Facility (CCI): California Correction Institution Plaintiff was seen by Dr. Sheila Wright Scott, M.D. who <u>PROVIDED</u> glasses to wear "<u>FULL</u>

7

TIME" after examination of Plaintiffs visual acuity, determining Refraction would protect left eye and remaining visual acuity.

Plaintiff has Suffered nerve damage and Deterioration of Visual Acuity over the 11 month period of time Dr. M. Foyle, OD denied and delayed treatment. Plaintiff according to CRA has severe glucoma, the prolonged delay of Refraction by Dr. M. Foyle caused nerve damage in both eyes and Visual Acuity deterioration. Thus, Dr. M. Foyle caused significant further **IRREVERSIBLE** damage, injury, and harm the Doctor should have known would occur.

Dr. S. Wright-Scott, M.D.'s treatment was to protect remaining vision by FULLTIME use of glasses and monitor eye pressure (10p), demostrating plaintiff's IRREVERSIBLE damage could have been prevented and protected by Dr. M. Foyle one year prior with Refraction per request of CRA doctors; M. Mani, T. Delengocky and A. Carraby on: 10/16/17; 12/14/17; 9/20/17; 11/16/17; 10/17/17; 12/6/17; and 1/17/18.

(Doc. No. 27 at 3-4 (all formatting, punctuation (or lack thereof), and misspelling in original).) It appears Plaintiff took heed of the Court's prior explanation of deficiencies in the Complaint, as these allegations now satisfy Plaintiff's burden to allege that he suffered additional harm from Dr. Foyle's alleged conduct. He specifically alleges that he was prescribed glasses a year after Dr. Foyle's examination, that the delay in receiving the glasses caused him more harm ("caused nerve damage"), and that the delay harmed his "good" left eye that had not been the subject of the "botched" operation. For purposes of the motion before the Court at this stage of the litigation, these allegations suffice to survive dismissal.

Defendant Foyle contends the exhibits attached to the FAC refute Plaintiff's allegations and actually demonstrate he did not suffer any harm. Specifically, Defendant contends: "Dr. Young prescribed minimal farsighted adjustment (+1.0 diopter) of the left eye while Dr. Foyle identified no need for left eye correction ('25/25') more than year earlier." (Doc. No. 28 at 4.) Unfortunately, to accept either of these propositions, the Court would necessarily have to wade into the realm of specialized knowledge that is not amenable to judicial notice. For example, without conducting its own independent

research, this Court does not readily know how good or bad a "+1.0 diopter" vision measurement is. And while the Court could surmise what 25/25 vision is, the Court cannot compare it against "+1.0 diopter" vision. While it ultimately may be true that Dr. Foyle and Dr. Young's measurements were not significantly disparate and that fact refutes Plaintiff's allegations of further harm, this Court cannot so conclude at this stage of the litigation without improperly consulting matters outside of the pleadings and common knowledge.

Additionally, the Court notes that Dr. Young ordered that Plaintiff "wear glasses full time to protect [his] left eye." (Doc. No. 27 at 16.) This begs the questions "protect his left eye from what?" and "why were glasses needed to protect his left eye?" And the Court wonders why one doctor believed glasses were necessary to protect Plaintiff's "good" eye while another doctor did not so believe. The answers to these questions, of course, could support or refute Plaintiff's claims, but those answers can be obtained only during the discovery process. However, for purposes of the motion before this Court, Dr. Young's notation above tends to bolster Plaintiff's allegations that eyeglasses could have protected him from further harm.

Based on the foregoing, the Court finds Plaintiff has now sufficiently pled a claim for Eighth Amendment.

## IV. CONCLUSION

Based on the foregoing, this Court RECOMMENDS that Defendant Foyle's motion to dismiss be DENIED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than January 18, 2020**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation." The parties are advised

9

1 | that failure to file objections within the specific time may waive to raise those objections on the appeal.

**IT IS ORDERED** that **no later than February 8, 2020**, any party may file a response to objections, if any are filed.

**IT IS SO ORDERED.**

DATED: December 30, 2019

Hon. William V. Gallo
United States Magistrate Judge