UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. JONES,<br><br>          Plaintiff,<br><br>v.<br><br>ARNETT CARRABY, M.D.; TAYSON DELENGOCKY, O.D.; MAJID MANI, M.D.; MICHAEL FOYLE, O.D.; AND ROGELIO ORTEGA, M.D.,<br><br>          Defendants. | Case No.: 18-CV-1609-AJB-WVG<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS** |

### I.  INTRODUCTION

This Report and Recommendation is submitted to District Judge Anthony J. Battaglia pursuant to 28 U.S.C. section 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. On July 16, 2018, William Joseph Jones ("Plaintiff"), a state prisoner proceeding *pro se*, filed a civil rights action under the Civil Rights Act, 42 U.S.C. section 1983 ("Section 1983"), against Arnett Carraby, M.D. ("Dr. Carraby"), Tayson Delengocky, D.O. ("Dr. Delengocky"), Michael Foyle, O.D. ("Dr. Foyle"), Majid Mani, M.D. ("Dr. Mani"), and Rogelio Ortega, M.D. ("Dr. Ortega") (collectively, "all named defendants"). (Doc. No. 1.) A year later, on August 26, 2019, Plaintiff amended his Complaint by asserting additional factual allegations against Dr. Foyle. (Doc. No. 27.) On

October 15, 2020, Plaintiff filed a Second Amended Complaint against all named defendants, which serves as the operative complaint in this action. (Doc. No. 36.) Now, Drs. Carraby, Delengocky, and Mani ("the three defendants") move the Court to dismiss the Second Amended Complaint in its entirety. (Doc. No. 43.) Having reviewed the Parties' submissions and the underlying record, the Court **RECOMMENDS** the three defendants' Motion to Dismiss be **GRANTED** and the Second Amended Complaint against the three defendants be DISMISSED without leave to amend.

## II.     FACTUAL BACKGROUND

Plaintiff is an inmate who received medical treatment at California Retina Associates ("CRA"), a private healthcare provider contracted by the California Department of Corrections and Rehabilitations ("CDCR"). The three defendants work for CRA. This case arises from a surgery on Plaintiff's right eye and the post-operative medical care Plaintiff received at CRA.

On March 17, 2017, Dr. Carraby performed cataract surgery on Plaintiff's right eye. (Doc. No. 36 at 5.) Plaintiff alleges that, during surgery, Dr. Carraby used a certain medical instrument that caused his retina to detach and severely impaired Plaintiff's vision. (*Id.*) Plaintiff adds that Dr. Carraby administered inadequate anesthesia, which caused Plaintiff to regain consciousness during the surgery and inflicted "unb[e]arable" pain, and over-prescribed a steroid, Prednisolone, to Plaintiff post-surgery, which irreversibly damaged his right eye. (*Id.*) After the surgery, Plaintiff complained to Drs. Carraby, Ortega, Delengocky, and Foyle, and a certain Dr. Qazi of ongoing pain and loss of vision in his right eye. (*Id.*) Plaintiff alleges the doctors advised him to give his eye time to heal and wait until the stitches were removed. (*Id.*)

Dissatisfied with the outcome of the surgery and the follow-up medical care he received at CRA, Plaintiff filed a CDCR Form 602 Healthcare Appeal on April 16, 2017 and requested to have his eyes reexamined. (Doc. No. 36 at 4.) On April 20, 2017, Dr.

Foyle examined Plaintiff for "refraction"[1] to determine whether to prescribe eyeglasses. (*Id.* at 4.) After doing so, Dr. Foyle decided not to prescribe eyeglasses to Plaintiff. (*Id.*)

On May 2, 2017, Dr. Carraby removed Plaintiff's stitches. (Doc. No. 36 at 6.) At such time, Plaintiff informed Dr. Carraby he could not see. (*Id.*) Subsequently, Plaintiff was transferred to CRA for additional post-surgical care with retina specialist, Dr. Delengocky. (*Id.*) On June 19, 2017, Dr. Delengocky discovered swelling in Plaintiff's retina and gave Plaintiff a steroid shot and a prescription for Diclofenac. (*Id.*) Dr. Delengocky extended the medication treatment after Plaintiff's visit on July 18, 2017. (*Id.*) On August 21, 2017, Dr. Delengocky informed Plaintiff he had lost about 50 percent of his vision in his right eye. (*Id.*)

On September 20, 2017, Dr. Foyle reexamined Plaintiff for eyeglasses. (Doc. No. 6 at 6.) Still unable to correct Plaintiff's vision with eyeglasses, Dr. Foyle referred Plaintiff to CRA for further evaluation of his retina. (*Id.*) Later that same day, Plaintiff was transported to CRA, where Dr. Delengocky performed additional tests. (*Id.*) Ultimately, Dr. Delengocky agreed with Dr. Foyle's assessment that Plaintiff's vision in his right eye could not be corrected with eyeglasses. (*Id.*)

On October 7, 2017, Dr. Carraby contacted Plaintiff to discuss potentially replacing Plaintiff's intraocular lens. (Doc. No 36 at 6.) On November 16, 2017, Dr. Mani met with Plaintiff and established a plan to preserve Plaintiff's vision solely in his left eye. (*Id.*) After additional visits at CRA, Plaintiff was reexamined for a second time by Dr. Foyle. (*Id.*) On December 7, 2017, Dr. Foyle checked Plaintiff's vision and again concluded that glasses would not correct or restore the vision in his right eye. (*Id.*) After being transferred

---

[1] "Eye refraction is the measurement of the required power for a person's eyeglasses or contact lenses and is calculated by means of a refraction test. A refraction test gives a doctor the precise measurement for a prescription that a patient will need for their glasses or contact lenses." Understanding Eye Refraction: What It Is and If You Need It, https://www.nvisioncenters.com/education/eye-refraction/ (last visited November 9, 2021).

to another prison in January 2018, Plaintiff obtained a prescription for eyeglasses from Dr. Wright-Scott, an optometrist who works for California Correctional Institution. (*Id*.)

Plaintiff alleges Dr. Carraby performed a botched surgery on his right eye and the post-operative care he received from all named defendants resulted in irreversible damage that was entirely avoidable. (*Id*.) Plaintiff now brings Eighth Amendment claims against all named defendants for cruel and unusual punishment as well as deliberate indifference to his serious medical needs. He seeks $300,000 in damages from each Defendant, three million dollars in punitive damages, and to be transferred to an "outside specialist and treatment team [to] have corrective eye surgery if possible to restore vision." (Doc. No. 1 at 19.)

### III. PROCEDURAL BACKGROUND

#### a. Plaintiff's State Court Action

On August 20, 2018, Plaintiff filed a complaint in Imperial County Superior Court against all named defendants and others alleging medical negligence ("state court action"). (Doc. No. 43-3 at 1-46.) On May 17, 2019, the three defendants filed a summary judgment motion in the state court action. (*Id*. at 89-268.) On July 22, 2019, Plaintiff filed an opposition to the three defendants' summary judgment motion. (*Id*. at 270-434.) On August 16, 2019, the three defendants replied to Plaintiff's opposition. (*Id*. at 436-448.) On January 22, 2020, the three defendants' summary judgment motion was granted, and the state court action was dismissed on February 19, 2020. (*Id*. at 48-56.) On February 18, 2020, Plaintiff filed an appeal with the Court of Appeal, Fourth Appellate District, Division One of the State of California. (*Id*. at 58-75.) On July 28, 2021, the state appellate court affirmed the trial court's decision. (*Id*.)

#### b. Plaintiff's Federal Court Action

On July 6, 2018, Plaintiff filed an initial complaint in the Southern District Court of California and alleged all named defendants violated his Eight Amendment rights. (Doc. No. 1.) On August 26, 2019, Plaintiff filed a First Amended Complaint against Dr. Foyle only. (Doc. No. 27.) On October 15, 2020, Plaintiff filed a Second Amended Complaint

against all named defendants. (Doc. No. 36.) On August 16, 2021, the three defendants filed a Motion to Dismiss the Second Amended Complaint ("Motion"). (Doc. No. 43.) On September 30, 2021, Plaintiff filed an Opposition to the Motion ("Opposition"). (Doc. No. 45.) On November 19, 2021, the three named defendants replied to Plaintiff's Opposition. (Doc. No. 46.) The Motion is now ripe for this Court's review.

## IV. LEGAL STANDARD

### a. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint may be dismissed as a matter of law for two reasons, namely for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable theory. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To resolve a motion to dismiss, the court must assume the truth of all factual allegations and construe them in a light most favorable to the non-movant. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). At no time is the court bound to accept as true a legal conclusion couched as a factual allegation. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Instead, the court must determine "whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, and documents relied upon but not attached to the complaint where authenticity is not contested. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Civ. P. 12(b)(6).

### b. Legal Standard in Pro Se Civil Rights Actions

Where a plaintiff appears pro se in a civil rights suit, the Court must be careful to construe the pleadings liberally and afford the plaintiff the benefit of the doubt. *Garmon v. Cty of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th

Cir. 1992). Moreover, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend the complaint and thus cure its deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## V.     DISCUSSION

The three defendants move to dismiss Plaintiff's Second Amended Complaint on the grounds (1) it is barred under the doctrine of res judicata; (2) service of process was insufficient[2]; and (3) Defendants lack evil motive or reckless indifference to be held liable for punitive damages. (Doc. No. 43-1.) Plaintiff opposes the Motion and argues the instant action is not barred because (1) he filed his action in federal court before initiating his state court action[3]; and (2) the remedies he seeks from the federal and state court actions arise

---

[2] Defendants argue the Second Amended Complaint should also be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure because Plaintiff failed to complete service of process as required. (Doc. No. 43-1 at 12.) However, because the Court dismisses the Second Amended Complaint on res judicata grounds, it need not address whether Plaintiff properly served Defendants.

[3] Plaintiff argues res judicata does not apply because he filed the instant action before the state court action. Without citing to legal authority, Plaintiff implies the date an action is filed controls whether res judicata applies, rather than the date final judgment is entered. Not so. The Court has extensively researched legal authority that may support Plaintiff's position and finds none exists. The Ninth Circuit has made clear "[r]es judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits," without regard for whether the previous action was first or subsequently filed. *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)). Indeed, the res judicata inquiry turns on the timing of entry of final judgment and not the sequence in which two separate actions are filed. See *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("California's law of res judicata dictates what preclusive effect is to be accorded to the prior judgment against appellant. That California law, however, determines the res judicata effect of a prior federal court judgment by applying federal standards. Therefore, those federal standards are applicable here to determine the preclusive effect of the prior judgment.").

from significantly different facts. (Doc. No. 45.)

### a. Res Judicata

#### i. Legal Standard

The preclusive effect of a prior judgment is referred to as res judicata. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Res judicata includes both claim preclusion and issue preclusion. *Americana Fabrics, Inc. v. L&L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985). Claim preclusion, at issue here, treats a previously entered judgment as the full measure of relief between the same parties on the same claim or cause of action and prevents re-litigation of all grounds of recovery or defenses, regardless of whether they were asserted or decided in the prior proceeding. *Id.* at 1529; *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

Under 28 U.S.C. section 1738, a federal court must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Accordingly, federal courts must apply state doctrines of claim and issue preclusion to determine the preclusive effect of prior state adjudications in subsequent federal litigation, including under Section 1983. *See id.* at 83-85. Here, Plaintiff's underlying state-court claim was brought in the state of California; thus, California law applies. *See Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1232-33 (9th Cir. 2014) (applying California doctrine of res judicata).

Under California law, res judicata precludes a plaintiff from relitigating a claim if (1) the claim relates to the same "primary right" as a claim in a prior action; (2) the party against whom the doctrine is being asserted was a party to the prior action; and (3) the prior judgment was final and on the merits. *Trujillo v. Santa Clara Cty.*, 755 F.2d 1359, 1366 (9th Cir. 1985) (internal citations omitted).

#### ii. Same Primary Right

Unlike the federal courts, which apply a "transactional nucleus of facts" test, California courts employ the "primary rights" theory to determine what constitutes the

same cause of action for claim preclusion purposes. *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004). Under this theory, a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 761 (9th Cir. 2003). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff seeks different forms of relief and/or adds new facts supporting recovery." *Eichmann v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983). So long as the same primary right is involved in the two actions, judgment in the first bars subsequent consideration of all matters that were raised or could have been raised in the first action. *Id.* at 1175.

In the instant action, the same primary right asserted here was also at stake in Plaintiff's state claim against the three defendants. Between both the state and federal court actions, Plaintiff alleged the harm he suffered was negligent performance of a routine cataract surgery on his right eye and negligent follow-up medical care, which resulted in irreversible damage to his right eye. Plaintiff alleged the exact same types of wrongful acts by the three defendants in the state and federal actions: (1) Dr. Carraby performed a "botched" cataract surgery on Plaintiff on March 17, 2017; (2) Dr. Carraby did not provide sufficient anesthesia, causing Plaintiff "unb[e]arable pain" and to regain consciousness during the surgery; (3) a medical instrument detached Plaintiff's retina during the surgery, resulting in severe visual impairment in his right eye; (4) Dr. Carraby over-prescribed Prednisolone, resulting in irreversible damage to Plaintiff's eyesight; and (5) Drs. Carraby, Delengocky, and Mani, and other defendants not named in this action failed to properly address Plaintiff's serious medical needs post-surgery.

In sum, the primary rights involved in this action are identical to the claims raised in Plaintiff's state court action. Accordingly, under California law, the claims Plaintiff seeks to relitigate before this Court invoke the preclusive effects of res judicata. Therefore, the first prong of the Court's inquiry into res judicata here is fulfilled.

### iii. Same Parties

California claim preclusion applies where the party "against whom the doctrine is being asserted was a party or in privity with a party to the prior adjudication." *In re Anthony H.*, 129 Cal. App. 4th 495, 503 (Cal. Ct. App. 2005). Privity is a legal conclusion finding an individual "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.1 997) (*quoting Southern Pacific Railway Co. v. United States*, 168 U.S. 1 (1897)).

Here, both Plaintiff's state and federal claims involve the exact same plaintiff and the same three defendants. Accordingly, the requirement under the res judicata doctrine that the action be between the same parties or parties in privity is met. In turn, the second prong of the Court's res judicata inquiry is fulfilled.

### iv. Final Judgment on the Merits

For res judicata to bar Plaintiff's due process claim here, the state court's decision must be final and on the merits. *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998). A decision is considered final and on the merits when the court resolves the rights of the parties on the substance of the claim, rather than on a procedural basis or under some other rule precluding state review of the merits. *Barker v. Fleming*, 423 F.3d 1085, 1092 (9th Cir. 2005). A summary judgment dismissal is considered a decision on the merits for res judicata purposes. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005).

In the state court action, Plaintiff's claims were indisputably decided on the merits. There, the trial court granted the summary judgment motion, filed on behalf of all named defendants, including the three defendants here, based on substantive law rather than on a procedural basis and fully explained its reasoning in its dispositive opinion. Further, the state appellate court upheld the trial court's decision, set forth its rationale, and finalized the trial court's decision on the merits. Thus, this third and final prong of the Court's res judicata inquiry is satisfied.

### v. Conclusion

The Court finds the three-pronged res judicata inquiry is met here. In sum, Plaintiff had the opportunity to fully litigate his state court action, a final judgment on the merits issued, and Plaintiff now impermissibly seeks to relitigate identical claims before this Court. Under such circumstances, res judicata bars the claims alleged in this instant action. In turn, any further amendment to the operative Second Amended Complaint would be futile. *Davis v. County of Maui*, 454 Fed. App'x 582, 583 (9th Cir. 2011) ("The district court correctly denied Davis leave to amend his complaint because res judicata would bar relief even with his proposed amendments; [the] amendment would be futile").

### b. Punitive Damages

The three defendants also move the Court to dismiss Plaintiff's claim for punitive damages. In view of the Court's above analysis, the matter of punitive damages becomes moot. Even so, the Court addresses punitive damages substantively here. To maintain his claim for punitive damages, Plaintiff's Second Amended Complaint must contain at least some allegations that the three defendants' "conduct [was] motivated by evil motive or intent, or [] involves reckless or callous indifference to the federally protected rights of others." *Arrellano v. Blahnik*, 2021 WL 1195798, at *3 (S.D. Cal. Mar. 30, 2021) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1986)). The Court finds no such allegations here. The Second Amended Complaint principally alleges the three named defendants "failed to respond to plaintiff['s] serious medical need" and sets forth what treatment plan each of the three defendants implemented while Plaintiff was in their care. (Doc. No. 36 at 3.) Plaintiff's lay and conclusory interpretation of his course of treatment and the loss of vision in his right eye, however unfortunate, do not amount to a claim for punitive damages. In liberally construing his pleading, the Court finds Plaintiff's assertions translate to a colorable negligence claim but nothing more. Absent any factual specificity demonstrating the three named defendants' evil motives or intent or reckless or callous indifference towards Plaintiff, the Court has no basis to find Plaintiff has any means to sustain a punitive damages claim under Section 1983 here.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint be **GRANTED** without leave to amend. **No later than January 21, 2022**, the Parties may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed and served on all parties **no later than February 25, 2022**. Failure to file objections within the specified time may waive the right to waive objections on appeal of the Court's order.

Dated: 12/21/2021

_____
Hon. William V. Gallo
United States Magistrate Judge